UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNFARMS, LLC, a Delaware Limited Liability Company; MITCH DMOHOWSKI, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>EURUS ENERGY AMERICA INC., a Delaware Corporation; EE WAIANAE SOLAR PROJECT LLC, a Delaware Limited Liability Company; TOYOTA TSUSHO AMERICA INC., a New York corporation (aka TOYOTA TSUSHO AMERICA; DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 3:18-cv-0058-L-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF No. 28, 29]** |

Pending before this Court is Defendants' Eurus Energy America Corporation ("Eurus"), a Delaware corporation; EE Waianae Solar Project LLC ("Project Company"), a Delaware limited liability company; and Toyota Tsusho America Inc. ("TTA"), a New York corporation (collectively "Defendants") motions [ECF Nos. 28, 29] to dismiss portions of Plaintiffs' Sunfarms, LLC ("Sunfarms"), a Delaware limited liability company, and Mitch Dmohowski (collectively "Plaintiffs") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendants move to dismiss all causes of actions against Project Company and TTA on the bases that they are (1) not a party to the Consulting Services Agreement ("the

Agreement") and (2) not alleged to have made any representations to Plaintiffs. Defendants also move to dismiss the causes of action for breach of contract relating to the termination of the contract, breach of implied covenant of good faith and fair dealing, fraud, common count, and unfair business practices against Eurus. For the reasons stated below, the Court GRANTS IN PART AND DENIES Defendants' Motions to Dismiss [ECF Nos. 28, 29]. Plaintiffs are granted LEAVE TO AMEND.

## Background

The following allegations are contained in the Plaintiffs' First Amended Complaint ("FAC") and are construed in a light most favorable to them.

**A. The Consulting Services Agreement**

On June 11, 2012, Eurus entered into the Agreement with Sunfarms to develop two renewable energy projects in Hawaii, Waianae Solar and Palehua Wind & Solar. ECF No. 22 ¶¶ 16, 20. Eurus, Sunfarms, and Mr. Dmohowski signed the Agreement.[1] ECF No. 22 at 40. Mr. Dmohowski specifically "acknowledged and agreed for purposes of Articles VI, VII, VIII and X (C) and (F)." *See id.*

Article III(B)(b) of the Agreement states that "Eurus may also terminate this Agreement in part with respect to any Project, in each case without Cause, upon thirty (30) days prior written notice to the other Party."[2] ECF No. 22 at 29. The Agreement also states that "[a]ny amendment to this Agreement must be in writing and executed by each of Eurus and the Company." ECF No. 22 at 37, Article X(C).

/ / /
/ / /
/ / /

---

[1] Mitch Dmohowski signed the Agreement both as the President of Sunfarms, LLC and in an individual capacity.

[2] Defendant Eurus may only trigger this clause "(ii) in the case of a direct or indirect sale or disposition by Eurus of all or any part of Eurus's interests in a Project or the applicable Project Company (a "Project Sale")[.]" ECF No. 22 at 29.

## B. Allegations

Eurus' breached the Agreement after failing to make certain payments required by Articles II and III of the Agreement. ECF No. 22 at ¶¶ 53-55; 57-61. Eurus also breached when they terminated the Agreement without cause. *Id.* ¶ 52.

On April 13, 2016 Robert Eisen, Eurus' Senior Vice President, informed Mr. Dmohowski that the Agreement would be terminated without cause after Waianae Solar achieved Commercial Operation and that Eurus would develop the Palehua Wind & Solar project without Sunfarms. ECF No. 22 at ¶ 23. On April 27, 2016, Satoshi Takahata, Eurus' new CEO, assured Mr. Dmohowski that the Agreement would not be terminated and requested Sunfarms continue development of Palehua Wind & Solar, which Sunfarms did. *Id.* at ¶¶ 24, 25. On January 27, 2017, pursuant to Article III(B)(b), Eurus gave Plaintiffs written notice of termination of the Agreement without cause, effective February 26, 2017. *Id.* at ¶ 31.

Additionally, Eurus failed to cause the Project Company to enter into a Royalty Agreement with Sunfarms, as required under Article II(C) of the Agreement on or prior to the Commercial Operation Date[3] for Waianae Solar. ECF No. 22 at ¶ 66. Eurus' first proposal of the Royalty Agreement contained unreasonable and unethical terms that would require Sunfarms to waive "Good Faith and Fair Dealing." *Id.* at ¶ 68. A revised draft was submitted without the waiver request on March 17, 2017, but was still unreasonable and unequal so Sunfarms returned it with revisions on March 20, 2017. *Id.* at ¶ 69-70. On June 12, 2017, Eurus sent a "Final and Executed by Eurus" Royalty Agreement, which lacked the majority of Sunfarm's draft's substantive comments and provided Eurus multiple opportunities to avoid its financial and legal obligations." *Id.* at ¶ 71, 73. "Eurus ceased negotiating in good faith." *Id.* ¶ 72. TTA is jointly liable for Eurus' obligations to Sunfarms

---

[3] On January 14, 2017, the Commercial Operation Date for Waianae Solar occurred. ECF No. 22 at ¶ 28.

involving the Project Company because the Project Company is owned jointly by Eurus and TTA. *Id.* ¶ 20.

## **Legal Standard**

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory, yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006). Even if doubtful in fact, factual allegations are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks and citation omitted). On the other hand, legal conclusions need not be taken as true merely because they are couched as factual allegations. *Id.* at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, the Court does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Nevertheless, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## **Discussion**

Defendants argue that the only proper parties to this case are Sunfarms and Eurus because they are the only parties that signed the entire Agreement. Plaintiffs argue all named parties are proper parties to the breach of contract and breach of implied covenant claims. First, Plaintiffs argue Mr. Dmohowski has standing to bring claims for breach of contract because he was a party to the Agreement. Second, TTA and the Project Company are proper parties because they are jointly and severally liable for Eurus' obligations under theories of enterprise liability, vicarious liability, and collateral agreement.

**Proper Parties**

*Mr. Dmohowski*

Defendants argue Mr. Dmohowski lacks standing to assert claims for breach of contract because he was not a party to the breached provisions of the Agreement. Plaintiffs argue he was a party to the entire Agreement and is specifically identified throughout the contract. This court agrees. The Agreement was signed by Eurus, Mr. Dmohowski as representative of Sunfarms, and Mr. Dmohowski as an individual. Although, Mr. Dmohowski "acknowledged and agreed for purposes of Articles VI, VII, VIII, and X (C) and (F)," he is nonetheless a party to the entire Agreement. As Defendants point out, the instant complaint alleges that Eurus breached the Agreement by failing to procure a royalty agreement in accordance with Article II(C). However, Defendants ignore that the royalty payment is "additional consideration for the Consulting Services[,]" a provision in which Mr. Dmohowski is identified specifically and listed as essential person to the consulting services rendered. *See* ECF No. 22 at 24, 27. Due to the emphasis placed on his expertise,

the Court finds that Mr. Dmohowski is a party to the Agreement. Defendants' motion to dismiss the claims brought by Mr. Dmohowski is DENIED.

*TTA and Project Company*

Plaintiffs argue the Project Company and TTA are jointly and severally liable for Eurus' obligations under theories of enterprise liability, vicarious liability, and collateral agreement. Defendants argue the claims against the Project Company and TTA should be dismissed because they are not parties to the Agreement and they cannot be liable for any of the alleged causes of action under theories of enterprise liability, vicarious liability, or collateral agreement.

A. *Enterprise Liability*

Under the alter ego doctrine, or enterprise liability, "[a] corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). In California, two requirements must be met to invoke the alter ego doctrine to separate corporations: "(1) such a unity of interest and ownership that the separate corporate personalities are merged, so that one corporation is a mere adjunct of another or the two companies form a single enterprise; and (2) an inequitable result if the acts in question are treated as those of one corporation alone. *Tran v. Farmers*, 104 Cal.App.4th 1202, 1219 (2002). "Whether these conditions have been satisfied is a question of fact." *Id.* at 1219. "Among the factors to be considered in applying the doctrine are comingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Roman Catholic Archbishop v. Superior Court*, 15 Cal. App. 3d 405, 411 (1971).

Plaintiffs allege that Sunfarms and Eurus entered the Agreement with the purpose to develop the projects, the Project Company is one of the projects, and that the Project Company is jointly owned by Eurus and TTA. ECF No. 22 at ¶ 20. From this they conclude

that Eurus and TTA have a single or unitary enterprise with the Project Company. However, Plaintiffs allege nothing more than a conclusory statement that the relationship between the separate corporations is one of a single enterprise that warrants application of the alter ego doctrine. Plaintiffs fail to adequately plead sufficient facts to show such a unity of interest and ownership between the companies that the separate corporate personalities are merged. Therefore, Plaintiffs fail to allege the Project Company and TTA are liable under enterprise liability.

B. *Vicarious Liability*

Plaintiffs assert TTA and the Project Company "are liable for the contractual obligations of Eurus because they are involved in a joint venture, an agency relationship and a partnership." ECF No. 30 at 12. Joint venture liability only applies in contract when three elements are satisfied: (1) the members must have joint control over the venture (even though they may delegate it); (2) the members must share the profits of the undertaking; and (3) the members must each have an ownership interest in the enterprise. *Jeld-Wen, Inc. v. Superior Court*, 131 Cal.App.4th 853, 872 (2005). An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Huong Que, Inc. v. Luu*, 150 Cal.App.4th 400, 410-11 (2007).Once an agency relationship is established, the principal can be held liable for the acts of its agent. *Von Beltz v. Stuntman, Inc.*, 207 Cal.App.3d 1467, 1488 (1989). While Plaintiffs allege the Project Company is owned jointly by Eurus and TTA, Plaintiffs fail to allege sufficient facts as to whether Eurus and TTA share profits or share control of the Project Company. Plaintiffs likewise fail to allege that either Defendant manifested assent to for one Defendant to be subject to the other. As such, Plaintiffs fail to allege facts showing how TTA or the Project Company are somehow vicariously liable for Eurus' obligations under the Agreement.

/ / /

/ / /

C. *Collateral Agreement*

Plaintiffs also assert that both the factual allegations and the Agreement itself "support a finding that there existed one or more collateral agreements between Eurus, TTA, and the Project Company that rendered all three entities liable to the Plaintiffs for Breach of Contract." ECF No. 30 at 13. Plaintiffs only offer this conclusory statement to show the existence of a collateral agreement. Plaintiffs do not to explain what the collateral agreement is or how it makes the Defendants liable. Therefore, Plaintiffs fail to properly allege a collateral agreement existed between the Defendants that makes them liable to the Plaintiffs for breach of contract.

For the foregoing reasons, the Court finds that Plaintiffs failed to adequately allege that the Project Company and TTA are jointly and severally liable for Eurus' obligations under theories of enterprise liability, vicarious liability, and collateral agreement. Therefore, Defendants' motion to dismiss all causes of actions against Project Company and TTA is GRANTED.

**Breach of Contract**

Defendants contend the breach of contract claims relating to wrongful termination of the Agreement should be dismissed because Eurus was entitled to terminate the Agreement under Article III(B)(b) and Article X(C) prohibits oral modification of the Agreement. "To be entitled to damages for breach of contract, a plaintiff must plead and prove (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff." *Walsh v. West Valley Mission Community College Dist.*, 66 Cal. App. 4th 1532, 1545 (1998).

A. *Termination in bad faith for illegal cause*

Defendants contend that Article III(B)(b) made it permissible to terminate the Agreement without cause. Article III(B)(b) of the Agreement reads, in pertinent part,

> "(ii) *in the case of a direct or indirect sale or disposition by Eurus of all or any part of Eurus's interests in a Project or the applicable Project Company (a 'Project Sale'),* Eurus may also terminate this Agreement in part

with respect to any Project, in each case without Cause, upon thirty (30) days
prior written notice to the other Party." ECF No. 22 at 29 (Emphasis added).

Plaintiffs allege that Eurus never intended to comply with the terms of the Agreement, that Eurus sought to renegotiate the agreement in bad faith, and that Eurus waited to terminate the agreement until after Plaintiffs had substantially complied with their end of the bargain. Assuming these allegations as true, Plaintiffs still fail to properly allege a breach of contract claim relating to wrongful termination as they fail to articulate how Defendants breached any termination provision. Plaintiffs neither disputes the timeliness of the notice nor whether the Agreement's triggering event occurred giving rise to Defendants' ability to terminate without cause. As such, the Court finds that Plaintiffs fail to plausibly plead a cause of action arising from the termination of the Agreement.

B. *Oral Agreement*

Defendants also contend that Article X(C) prohibited Plaintiffs' purported oral modification of the Agreement with Mr. Takahata, Eurus CEO. In addition, Defendants assert that Plaintiffs' attempted modification to the written Agreement is not allowed under California law. Article X(C) of the Agreement states: "Any amendment to this Agreement must be in writing and executed by each of Eurus and the Company." ECF No. 22 at 37. California Civil Code Section 1698 allows for modification of a written contract as follows: (a) in another written contract; (b) by oral agreement to the extent that the oral agreement is executed by the parties; or (c) unless the contract otherwise expressly provides, by oral agreement supported by new consideration.

Plaintiffs allege an oral contract was made between the CEO of Eurus and Mr. Dmohowski that modified the Agreement or constituted a separate, superseding contract, which prevented Eurus from terminating the Agreement at-will. However, there was no written contract modifying the Agreement, the alleged oral modification of the Agreement was never executed by both parties, and the Agreement specifically excludes oral modification in Article X(C). Moreover, no new consideration was provided in exchange for this oral assurance which amounts to ratification as Plaintiffs promise to perform was

part of the original consideration. Therefore, Plaintiffs failed to allege sufficient facts to demonstrate a valid oral modification of the written Agreement.

For the foregoing reasons, Eurus' motion to dismiss Plaintiffs' breach of contract claim is GRANTED.

**Breach of Implied Covenant of Good Faith and Fair Dealing Claim**

Every contract "imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 798 (2008). "To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F.Supp.2d 1012, 1021–22 (N.D.Cal.2009) (citing *Racine & Laramie v. Dep't of Parks & Rec.*, 11 Cal.App.4th 1026, 1031 (1992)). "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 373 (1992). Thus, in order to allege breach of the implied covenant of good faith and fair dealing where there has been no breach of a specific provision of the contract, plaintiff must "demonstrates a failure or refusal to discharge contractual responsibilities." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App.3d 1371, 1395 (1990).

Plaintiffs allege Defendants breached the implied covenant of good faith and fair dealing when Eurus (1) failed to make the milestone payment upon the Commercial Operation of Waianae, (2) failed to cause the Project Company to enter into a Royalty Agreement with Sunfarms, negotiated the Royalty Agreement in bad faith, and (3) terminated the Agreement in bad faith. Defendants contend this claim should be dismissed because these allegations are simply duplicative of the first cause of action for breach of contract. However, this is not a sufficient reason for dismissal. Pursuant to Federal Rule of Civil Procedure 8(d), a plaintiff may allege alternative and inconsistent claims for relief. To the extent the allegations are sufficient for relief under the breach of contract claim,

1 | Plaintiffs may be able to recover under that theory. To the extent they do not amount to breach of contract, Plaintiffs may be able to show, for example, that although Defendants' conduct was not prohibited by the agreement, it was "nevertheless contrary to the contract's purposes and the parties' legitimate expectations." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 373 (1992). Accordingly, Eurus' motion to dismiss the breach of implied covenant of good faith and fair dealing claim is DENIED.

**Fraud Claim**

To comply with Federal Rule of Civil Procedure 9(b), "the circumstances constituting fraud . . . shall be stated with particularity." "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.2010) (internal quotation marks and citations omitted)). "The elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997) (internal quotation marks omitted). California law bars tort claims based on the same facts and damages as breach of contract claims under the economic loss doctrine. The economic loss doctrine requires a plaintiff "recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004)). The California Supreme Court instructs that "the economic loss rule prevents the law of contract and the law of tort from dissolving into the other." *Id.* (Internal quotation marks omitted). "[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from the principles of tort law." *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999).

Plaintiffs' fraud claim alleges that, on June 11, 2012, Mark Anderson, Eurus' CEO at that time, falsely represented to Sunfarms that Eurus had a reputation and practice of honoring express and implied contract terms. Plaintiffs also allege fraud based on Eurus' current CEO, Satoshi Takahata, falsely representing, on April 27, 2016, that the consulting services agreement would not be terminated. Plaintiffs allege Eurus knew the representations were false when the statements were made because Plaintiffs discovered other developers "were similarly terminated by Eurus, evidence of its knowledge of the falsity of representations to Sunfarms regarding ostensible compliance with express and implied terms of contracts[.]" ECF No. 22 at ¶ 86. Plaintiffs allege the statements made by Robert Eisen, Eurus Senior VP, where he informed Plaintiffs of Eurus' intention to terminate the Agreement once Waianae entered operation and that he and Greg Bishop, a Eurus engineering consultant, would develop the Palehua project for Eurus as development consultants, was evidence of fraud in the inducement because they were "indicative of Eisen's intention, imputable to Eurus, to go through the motions, to wit, enter the Agreement and elicit work commitments and performance from Sunfarms superintended by Dmohowski and then to renege." *Id.* at ¶ 81. Plaintiffs allege Eurus intended for Sunfarms rely on the false representations to advance the development of the Projects, that Sunfarms justifiably relied on the representations by not bringing the Projects to other developers, and were damaged by losing those profits. *Id.* at ¶ ¶ 87-90.

Despite Plaintiffs' contention that Eurus' Anderson's representation amounted to fraud, the Court is not persuaded because, as Article X(C) of the Agreement reads, "[t]his Agreement contains the entire agreement between the Parties . . . and supersedes any and all prior oral or written expressions, understandings or agreements among the Parties, Mitch or their affiliates." As such, any breach of a pre-execution promise stems from the underlying contract and recovery can only be sought in breach of contract. However, the Court finds that Takahata's representation is distinct. By providing assurances to Plaintiffs *after* Robert Eisen, Eurus' Senior Vice President, anticipatorily repudiated the Agreement, Eurus' Takahata unquestionably made an affirmative representation that Plaintiffs

12

3:18-cv-0058-L-AGS

justifiably relied upon to their detriment. But for Takahata's representation, Plaintiffs may have mitigated their damages or ceased performance under the Agreement altogether. Accordingly, Takahata's representation does not stem from the breach of contract allegations, which involve Eurus' refusal to pay Plaintiffs' Milestone Payment invoice and failure to enter into a timely Royalty Agreement pursuant to the executed Agreement. Accordingly, the economic loss doctrine does not bar Plaintiffs from bringing this fraud claim based on Takahata's tort independent of the breach and California public policy supports this finding.[4] Nonetheless, the Court finds that Plaintiffs' fraud allegation fails to satisfy Rule 9(b) as it does not allege his knowledge of falsity with particularity. Accordingly, Eurus' motion to dismiss Plaintiffs' fraud claim is GRANTED.

**Unfair Business Practices Claim**

The UCL prohibits unlawful, unfair or fraudulent business acts or practices. Cal. Bus. & Prof. Code § 17200. "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cal-Tech. Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). Plaintiffs allege the UCL claim under the last two prongs.

Plaintiffs allege that "Eurus committed unfair and fraudulent business acts as set forth *infra* to induce Sunfarms and Dmohowski consulting on the projects to Eurus instead of bringing them to other developers." FAC ¶ 96. "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal.App.4th 1457, 1473 (2006). However, Plaintiffs fail to allege how Defendants' actions caused injury to consumers. Therefore, Plaintiffs failed to properly allege a UCL claim based on an unfair act.

---

[4] *See Robinson*, 34 Cal.4th at 991-92.

Plaintiffs also allege fraudulent business acts. Defendants argue Plaintiffs UCL claim based on fraud fails to satisfy Rule 9(b)'s pleading requirements. This Court agrees. A UCL claim grounded in fraud is subject to the particularity requirement of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *Kearns v. Ford Motors Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009). Plaintiffs' UCL claim, which is based on the same allegations of the fraud claim, fails to meet the heightened standard. Therefore, Defendants' motion to dismiss the UCL claim is GRANTED.

**Leave to Amend**

Leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted). "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is not appropriate unless it is clear the complaint cannot be saved by amendment. *Id.* As such, the Court grants Plaintiffs' leave to amend the complaint.

**Conclusion & Order**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motions to dismiss [ECF No. 28, 29]. Furthermore, no later than twenty-eight (28) days after the entry of this order, Plaintiffs shall file an amended complaint.

**IT IS SO ORDERED.**

Dated: December 17, 2018

Hon. M. James Lorenz
United States District Judge