UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNFARMS, LLC, a Delaware Limited Liability Company; MITCH DMOHOWSKI, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>EURUS ENERGY AMERICA INC., a Delaware Corporation; EE WAIANAE SOLAR PROJECT LLC, a Delaware Limited Liability Company; TOYOTA TSUSHO AMERICA INC., a New York corporation (aka TOYOTA TSUSHO AMERICA; DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 3:18-cv-0058-L-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF No. 40, 41]** |

Pending before this Court are two motions to dismiss portions of Plaintiffs' Sunfarms, LLC ("Sunfarms"), a Delaware limited liability company, and Mitch Dmohowski (collectively "Plaintiffs") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF Nos. 40, 41]. The first motion was filed by Defendants' Eurus Energy America Corporation ("Eurus"), a Delaware corporation, and EE Waianae Solar Project LLC ("Project Company"), a Delaware limited liability company, (collectively "Defendants"). Defendant Toyota Tsusho America Inc. ("TTA") based its motion to dismiss on the memorandum of points and authorities filed by Eurus and the Project Company. *See* ECF No. 41.

1

Defendants move to dismiss all causes of actions against Project Company and TTA under any theory of derivative liability. Defendants also move to dismiss the causes of action for breach of contract relating to the termination of the contract, breach of implied covenant of good faith and fair dealing, fraud, and unfair business practices against Eurus and TTA. For the reasons stated below, the Court GRANTS IN PART AND DENIES Defendants' Motions to Dismiss [ECF Nos. 40, 41]. Plaintiffs' request for leave to amend is GRANTED IN PART and DENIED IN PART.

## **Background**

The following allegations are contained in the Plaintiffs' Second Amended Complaint ("FAC") and are construed in a light most favorable to them.

### A. The Consulting Services Agreement

On June 11, 2012, Eurus entered into the Agreement with Sunfarms to develop two renewable energy projects in Hawaii, Waianae Solar and Palehua Wind & Solar. ECF No. 39 ¶¶ 16, 20. Eurus, Sunfarms, and Mr. Dmohowski signed the Agreement.[1] *Id.* at 51. Mr. Dmohowski specifically "acknowledged and agreed for purposes of Articles VI, VII, VIII and X (C) and (F)." *See id.*

Article III(B)(b) of the Agreement states that "Eurus may [] terminate this Agreement in part with respect to any Project, in each case without Cause, upon thirty (30) days prior written notice to the other Party." ECF No. 39 at 40. The Agreement also states that "[a]ny amendment to this Agreement must be in writing and executed by each of Eurus and the Company." *Id.* at 48, Article X(C).

### B. Allegations

Eurus' breached the Agreement after failing to make certain payments required by Articles II and III of the Agreement. *See* ECF No. 39. Eurus also breached when they terminated the Agreement without cause. *Id.*

---

[1] Mitch Dmohowski signed the Agreement both as the President of Sunfarms, LLC and in an individual capacity.

On April 13, 2016 Robert Eisen, Eurus' Senior Vice President, informed Mr. Dmohowski that the Agreement would be terminated without cause after Waianae Solar achieved Commercial Operation and that Eurus would develop the Palehua Wind & Solar project without Sunfarms. ECF No. 39 at ¶ 33. On April 27, 2016, Satoshi Takahata, Eurus' new CEO, assured Mr. Dmohowski that the Agreement would not be terminated and requested Sunfarms continue development of Palehua Wind & Solar, which Sunfarms did. *Id.* at ¶¶ 34, 35. On January 27, 2017, pursuant to Article III(B)(b), Eurus gave Plaintiffs written notice of termination of the Agreement without cause, effective February 26, 2017. *Id.* at ¶ 43.

Additionally, Eurus failed to cause the Project Company to enter into a Royalty Agreement with Sunfarms, as required under Article II(C) of the Agreement on or prior to the Commercial Operation Date[2] for Waianae Solar. *See* ECF No. 39. Eurus' first proposal of the Royalty Agreement contained unreasonable and unethical terms that would require Sunfarms to waive "Good Faith and Fair Dealing." *Id.* at ¶ 42. A revised draft was submitted without the waiver request on March 17, 2017, but was still unreasonable and unequal so Sunfarms returned it with revisions on March 20, 2017. *Id.* at ¶ 49-51. On June 12, 2017, Eurus sent a "Final and Executed by Eurus" Royalty Agreement, which lacked the majority of Sunfarms' draft's substantive comments and provided Eurus multiple opportunities to avoid its financial and legal obligations. *Id.* at ¶ 55-56. TTA is jointly liable for Eurus' obligations to Sunfarms involving the Project Company because the Project Company is owned jointly by Eurus and TTA. *Id.* ¶ 20.

## **Legal Standard**

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035,

---

[2] On January 14, 2017, the Commercial Operation Date for Waianae Solar occurred. ECF No. 29 at ¶ 40.

1041 (9th Cir. 2010). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory, yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006). Even if doubtful in fact, factual allegations are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks and citation omitted). On the other hand, legal conclusions need not be taken as true merely because they are couched as factual allegations. *Id.* at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, the Court does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Nevertheless, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

/ / /

4

**Discussion**

I.   **Proper Parties**

*TTA and Project Company*

Defendants contend the claims against the Project Company and TTA should be dismissed because Plaintiff fails to allege a claim against either entity under theories of enterprise liability, vicarious liability, or collateral agreement. ECF No. 40-1 at 12-17.

A. *Enterprise Liability*

Under the alter ego doctrine, or enterprise liability, "[a] corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). In California, two requirements must be met to invoke the alter ego doctrine to separate corporations: "(1) such a unity of interest and ownership that the separate corporate personalities are merged, so that one corporation is a mere adjunct of another or the two companies form a single enterprise; and (2) an inequitable result if the acts in question are treated as those of one corporation alone." *Tran v. Farmers*, 104 Cal.App.4th 1202, 1219 (2002) (citation omitted). "Whether these conditions have been satisfied is a question of fact." *Id.* "Among the factors to be considered in applying the doctrine are comingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Roman Catholic Archbishop v. Superior Court*, 15 Cal. App. 3d 405, 411 (1971).

As to the Project Company, Defendants contend "the SAC alleges no facts demonstrating Plaintiffs [] have a plausible claim" under any derivative theory of liability. ECF No. 40-1 at 15. Plaintiffs do not rebut this contention in the opposition briefing. Moreover, the Court did not identify any allegations against EE Waianae Solar Project LLC ("Project Company") in its review of the SAC. As such, any claim against the Project

5

Company shall be dismissed. Therefore, Defendants Eurus and the Project Company's motion to dismiss is GRANTED on this ground.

As to TTA, Defendants also contend TTA is not liable for the Project Company's obligations because "[c]ommon ownership alone is insufficient to disregard the corporate form." ECF No. 40-1 at 15. (citing *Sandoval v. Ali*, 34 F.Supp.3d 1031, 1040 (N.D. Cal. 2014). Defendants assert that the SAC fails to allege TTA owns or otherwise controls Eurus. *Ibid.* Plaintiffs respond that a single, or unitary enterprise between all defendants is alleged because Plaintiffs allege the purpose of the Consulting Services Agreement was to develop projects, one of which was the Project Company—jointly owned by Eurus and TTA. ECF No. 43-1 at 17. The California Supreme Court in *Butler Brothers v. McColgan*, 17 Cal.2d 664, 678 (1941), *aff'd*, 315 U.S. 501 (1942) held that the unitary nature of a business is established by the existence of the three unities: (1) unity of ownership; (2) unity of operation; and (3) unity of use. Alternatively, some courts use the dependency/contribution test to determine whether the operation of the portion of the business within California is dependent upon or contributes to the operation of the business outside the state. *See Edison Cal. Stores, Inc. v. McColgan*, 30 Cal.2d 472, 481 (1947).

The Court finds the SAC alleges unity of interest and ownership among the Defendants, including TTA. Unity of Ownership is clearly alleged as the SAC alleges that TTA is "the wholly owned subsidiary of Toyota Tsusho Corporation. . . . [who also] owns 60% of Eurus Energy Holding Corporation and, as such, is the majority and controlling owner of Eurus Energy Holdings Corporation." *See* ECF No. 39 at 5. It is also alleged that Eurus and TTA jointly own the Project Company. *Ibid.* The SAC also satisfies unity of operation as the SAC alleges that Eurus represented to Plaintiff Sunfarms that it should consider all work for TTA covered by the Consulting Services Agreement. *Id.* at 6. Specifically, the SAC alleges that Akira Suzuki of TTA directed Plaintiff Sunfarms "to arrange meetings with the Governor of Hawaii, the CEO of Hawaiian Electric, and the Hawaii Public Utilities Commission along with a site visit to [the Project Company] in advance of [TTA's] final approval to co-invest in [the Project Company.]" *Id.* at 9-10.

*See Chase Brass & Cooper Company v. Franchise Tax Bd.*, 95 Cal.Rptr. 805 (Cal. App. Ct. 1970) (illustrating this requirement relates to staff functions). It is also alleged that "Eurus directed Sunfarms to arrange meetings and site visits in Hawaii for Hideyuki Inazumi of Toyota Tsusho Corporation, in advance of the final approval for the $3,683,000.00 purchase of [the Project Company]". *Id.* at 6. *See Anaconda Co. v. Franchise Tax Bd.*, 181 Cal.Rptr. 640 (Cal. App. Ct. 1982) (demonstrating that whether unity of operation exists turns on the extent to which related companies are dependent on each other financially); *see also Standard Register Co. v. Franchise Tax Bd.*, 66 Cal.Rptr. 803 (Cal.Ct. App. 1968) (A parent company's motivation to purchase a subsidiary is relevant in determining unity of a business). Plaintiffs allege that Inazumi "served as both an Executive Officer of Toyota Tsusho Corporation and a Board Member of Eurus Energy Holdings Corporation representing Toyota Tsusho Corporation." *Ibid.* The overlapping directorships of Inazumi is sufficient to demonstrate unity of use. *See Chase Brass*, 95 Cal.Rptr. at 809 ("The integration of executive forces is an element of exceeding importance.").

Plaintiffs clearly satisfy the "inequitable result" prong of the enterprise liability test. "[I]t would be unjust to permit those who control companies to treat them as a single . . . enterprise and then assert their . . . separateness in order to commit frauds and other misdeeds with impunity." *Tran*, 104 Cal.App.4th at 1219. It is alleged that Defendants have refused to pay Plaintiffs' $500,000 Short List Payment invoice for the Project Company while TTA displays the Project Company on its company website as an example of one of its successful energy projects. *See* ECF No. 39 at 10-11, 14. The SAC also alleges that Defendant breached the Consulting Services Agreement by failing to cause the Project Company to enter into the royalty agreement for the Project Company, valued at $2,070,000. *Id.* at 18. Moreover, it is also alleged that the Project Company has been in commercial operation for two years without providing benefits to the community stakeholders. *See id.* at 16.

For the foregoing reasons, the Court finds that Plaintiffs' SAC sufficiently alleges enterprise liability among Defendants, including TTA. Therefore, Defendant TTA's motion to dismiss [ECF No. 41] is DENIED on this ground. Accordingly, the Court will not examine TTA's liability under the other derivative liability theories.

## II. Breach of Contract

Defendants next contend Plaintiffs alleged no additional breach of contract facts in the SAC. ECF No. 40-1 at 17-18. Defendants still assert Plaintiffs' breach of contract claims relating to wrongful termination of the Agreement should be dismissed because Eurus was contractually authorized to terminate the Agreement under Article III(B)(b) and Article X(C) prohibited oral modification of the Agreement. *Id.* "To be entitled to damages for breach of contract, a plaintiff must plead and prove (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff." *Walsh v. West Valley Mission Community College Dist.*, 66 Cal. App. 4th 1532, 1545 (1998).

A. *Termination in bad faith*

Defendants contend that Article III(B)(b)(i) made it permissible to terminate the Agreement without cause. Article III(B)(b) of the Agreement reads, in pertinent part,

> "In addition to a Termination for cause, (i) *at any time after the Initial Term of this Agreement, either Party may also terminate this Agreement in whole or* (ii) in the case of a direct or indirect sale or disposition by Eurus of all or any part of Eurus's interests in a Project or the applicable Project Company (a 'Project Sale'), Eurus may also terminate this Agreement in part with respect to any Project, *in each case without Cause, upon thirty (30) days prior written notice to the other Party*." ECF No. 39 at 40 (Emphasis added).

Plaintiffs continue to assert that Eurus never intended to comply with the terms of the Agreement, sought to renegotiate the agreement in bad faith, and waited to terminate the agreement until after Plaintiffs had substantially complied with their end of the bargain. ECF No. 43-1 at 20. To the extent Plaintiffs' breach of contract claim is grounded in wrongful termination, Plaintiffs still fail to properly allege a breach of contract claim relating to wrongful termination as they fail to articulate how Defendants breached any

8

3:18-cv-0058-L-AGS

termination provision. Alternatively, Defendants do not challenge Plaintiffs' allegations based on Defendants' failure to enter a royalty agreement and failure to pay Plaintiffs a short list payment due upon termination without cause. Accordingly, Plaintiffs breach of contract allegations based on wrongful termination are dismissed while Plaintiffs' remaining breach of contract allegations remain. Therefore, Defendants' motions to dismiss are GRANTED on this ground.

B. *Oral Agreement*

Defendants also contend that Plaintiffs failed to show that the alleged oral agreement usurped the contract language mandating written modifications. ECF No. 40-1 at 18. Plaintiffs contend both that there was a separate contract and a valid oral modification due to Plaintiffs' waiving or rescinding of their rights under the termination provisions of the Agreement. ECF No. 43-1 at 21. Article X(C) of the Agreement states: "Any amendment to this Agreement must be in writing and executed by each of Eurus and the Company." ECF No. 39 at 48. California Civil Code Section 1698 allows for modification of a written contract as follows: (a) in another written contract; (b) by oral agreement to the extent that the oral agreement is executed by the parties; or (c) unless the contract otherwise expressly provides, by oral agreement supported by new consideration.

Plaintiffs allege that the Consulting Services Agreement was modified by an oral agreement with Mr. Takahata, Eurus' CEO. ECF No. 39 at 17-18. The SAC alleges that, on April 27, 2016, Mr. Takahata assured Plaintiff Dmohowksi that the Agreement would not be terminated and requested Plaintiffs continue the Palehua Wind & Solar development to secure a Hawaiian Electric Power Purchase Agreement. ECF No. 39 at 9. Plaintiffs allege that Plaintiff Dmohowski's assent to Mr. Takahata established a new, superseding contract to the Agreement. *Ibid.* Article X(C) of the Consulting Services Agreement prohibited Plaintiffs' purported oral modification of the Agreement with Mr. Takahata, Eurus CEO.

The Court's reasoning set forth in the Court's prior order on this sub-issue still applies. The SAC alleges a separate, superseding contract prevented Eurus from

terminating the Agreement at-will. However, there was no written contract modifying the Agreement, the alleged oral modification of the Agreement was never executed by both parties, and the Agreement specifically excludes oral modification in Article X(C). Moreover, no new consideration was provided in exchange for this oral assurance which amounts to ratification as Plaintiffs promise to perform was part of the original consideration. Although Plaintiffs contend that their waiver of termination and rescission rights amounts to new consideration, Plaintiffs fail to allege what cause existed, on April 27, 2016, from which Plaintiffs had the right to terminate the Agreement upon written notice. Therefore, Plaintiffs failed to allege sufficient facts to demonstrate a valid oral modification of the written Agreement.

For the foregoing reasons, Eurus' motion to dismiss Plaintiffs' breach of contract allegations based on wrongful termination are dismissed while Plaintiffs' breach of contract claim based on (1) the failure to make the milestone payment and (2) Eurus' failure to cause the Project Company to enter into a royalty agreement with Plaintiffs remains. Accordingly, Defendants' motions to dismiss are GRANTED on this ground.

### III.     Breach of Implied Covenant of Good Faith and Fair Dealing Claim

Defendants contend that Plaintiffs' breach of implied covenant of good faith and fair dealing should be dismissed without leave to amend. ECF Nos. 40-1 at 18-21, 44 at 10-11. Specifically, Defendants assert that Plaintiffs cannot bring this claim based on (1) Defendants terminating the Agreement because it was authorized in the Agreement; and (2) Defendants' failure to negotiate the royalty agreement in good faith because no implied covenant covered the negotiations. *Id.* Plaintiffs contend Defendants breached the implied covenant when Eurus (1) failed to make the milestone payment upon the Commercial Operation of Waianae, (2) failed to cause the Project Company to enter into a Royalty Agreement with Sunfarms, negotiated the Royalty Agreement in bad faith, and (3) terminated the Agreement in bad faith. ECF No. 43-1 at 22-23.

Every contract "imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784,

10

3:18-cv-0058-L-AGS

798 (2008). "To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F.Supp.2d 1012, 1021–22 (N.D. Cal. 2009) (citing *Racine & Laramie v. Dep't of Parks & Rec.*, 11 Cal.App.4th 1026, 1031 (1992)). "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 373 (1992). Thus, in order to allege breach of the implied covenant of good faith and fair dealing where there has been no breach of a specific provision of the contract, plaintiff must "demonstrates a failure or refusal to discharge contractual responsibilities." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App.3d 1371, 1395 (1990).

Defendants relies on *Carma*, 2 Cal.4th at 374, to assert that Plaintiffs' breach of implied covenant of good faith and fair dealing should be dismissed because the Agreement expressly authorized Eurus to terminate the Agreement without cause. ECF No. 40-1 at 20. The Court agrees. The SAC alleges that Eurus terminated the Agreement to avoid paying Plaintiffs for consulting on Palehua Wind & Solar. ECF No. 39 at 21. However, as stated above, the Agreement expressly authorized Defendants to terminate the Agreement with or without cause. As such, the Court finds that Plaintiffs' breach of an implied covenant of good faith and fair dealing cannot be grounded in Defendants' termination of the Agreement. *Carma*, 2 Cal.4th at 374 ("As to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct.")

However, Defendants' attempt to dismiss Plaintiffs' implied covenant allegations concerning Defendants failure to make the milestone payment upon commercial operation of the Project Company is not persuasive. "In essence, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants)

frustrates the other party's rights to the benefits of the contract." *Racine & Laramie, Ltd. v. Dept. of Parks & Recreation*, 11 Cal.App.4th 1026, 1031-32 (1992) (emphasis omitted). The SAC alleges that the Senior Vice President of Eurus made efforts to renegotiate and substantially reduce the milestone payment due to Plaintiffs upon the commercial date for Waianae Solar. ECF No. 39 at 19. The Agreement required Eurus to disburse the milestone payment for Waianae Solar on January 14, 2017, the commercial operation date. *Id.* at 37-38. Instead, Defendants claimed it did not have all necessary permits for construction and operation to avoid payment despite Eurus previously representing to Hawaiian Electric that it had obtained all required permits and contracts under Article 22.2 of the Power Purchase Agreement. *Id.* at 20. Unlike Plaintiffs' termination allegations, Defendants have not highlighted an express provision authorizing such behavior. As the Court stated in its previous order, a plaintiff may allege alternative and inconsistent claims for relief pursuant to Federal Rule of Civil Procedure 8(d). To the extent the allegations are sufficient for relief under the breach of contract claim, Plaintiffs may recover under that theory. To the extent they do not amount to breach of contract, Plaintiffs may be able to show, for example, that although Defendants' conduct was not prohibited by the agreement, it was "nevertheless contrary to the contract's purposes and the parties' legitimate expectations." *Carma*, 2 Cal.4th at 373. Moreover, the Court finds Plaintiffs' allegations allege both elements of a breach of implied covenant of good faith and fair dealing cause of action.

Defendants' contention that its failure to enter into a royalty agreement with Plaintiffs should be dismissed as a part of negotiations is equally unfounded. "The covenant of good faith finds particular application in situations where one party is [vested] with a discretionary power affecting the rights of another. Such power must be exercised in good faith." *Carma*, 2 Cal.4th at 372 (citations omitted). Defendants rely on *Racine*, 11 Cal.App.4th at 1031-32, 1033 n.4, to illustrates that there is no implied covenant while parties are in negotiations. ECF No. 40-1 at 21. Defendants are correct in that there is not express commitment to enter into negotiations. The Court however finds that the SAC

allegations and the Agreement demonstrate that Defendants' had an express provision to enter into a contract. The Agreement called for Eurus to cause the Project Company to enter into a royalty agreement, consisting of specific terms, with Plaintiffs on or prior to January 14, 2017. ECF No. 39 at 38. The Court also finds that the SAC alleges sufficient facts showing Defendants' conduct frustrated Plaintiffs' expected benefit as a contracting party. Although the commercial operation date occurred on January 14, 2017, Eurus did not present Plaintiffs with a royalty agreement for Waianae Solar until January 25, 2017. ECF No. 39 at 20. The royalty agreement presented by Eurus contained unreasonable terms, even requiring Plaintiffs to waive "Good Faith and Fair Dealing." *Ibid*. The Court notes that Defendants' assertion that the implied covenant good faith and fair dealing was not implicated in the exchange of royalty agreement drafts is disingenuous where Defendants attempted to have Plaintiffs waive that covenant. While Eurus submitted a revised draft of a royalty agreement to Plaintiffs on March 17, 2017 without the waiver, the SAC alleges the revised royalty agreement sill contained unreasonable terms. *Ibid*. After Plaintiffs sent Defendants a revised royalty agreement with proposed changes on March 20, 2017, Defendants failed to respond for nearly three months. *Ibid*. Defendants eventually submitted a "Final and Executed by Eurus" royalty agreement on June 12, 2017, which failed to include many of Plaintiffs' substantive comments and included multiple opportunities for Defendants to avoid financial and legal obligations under the Agreement. *Ibid*. Ultimately, the Court finds that Plaintiffs have sufficiently alleged facts touching on both elements of the implied covenant claim. Accordingly, Defendants' motions to dismiss the breach of implied covenant of good faith and fair dealing claim are GRANTED IN PART and DENIED IN PART on this claim.

### IV. Fraud Claim

To comply with Federal Rule of Civil Procedure 9(b), "the circumstances constituting fraud . . . shall be stated with particularity." "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is

13

3:18-cv-0058-L-AGS

false.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.2010) (internal quotation marks and citations omitted)). "The elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997) (internal quotation marks omitted). California law bars tort claims based on the same facts and damages as breach of contract claims under the economic loss doctrine. The economic loss doctrine requires a plaintiff "recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004)). The California Supreme Court instructs that "the economic loss rule prevents the law of contract and the law of tort from dissolving into the other." *Id.* (Internal quotation marks omitted). "[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from the principles of tort law." *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999).

Defendants contend Plaintiffs fraud claim should be dismissed because it fails to satisfy Federal Rule of Civil Procedure 9(b). The Court agrees with Defendants. Specifically, Defendants assert that Plaintiffs fail to allege Mr. Takahata's knowledge of the falsity of his misrepresentation with particularity in violation of Rule 9(b). While the SAC alleges "Takahata made these statements knowing they were false and with no intention to carry them out[,]" it fails to allege facts showing how Mr. Takahata would have obtained such knowledge. *See* ECF No. 39 at 23. The SAC also alleges that empty promises were made to other developers to induce work while Defendants intended to terminate the contract once commercial operation is achieved. *See ibid.* However, no allegation exists that Mr. Takahata made these other misrepresentations to other companies. Moreover, the SAC alleges that Mr. Takahata was a new CEO of Eurus. This begs the question of whether the earlier misrepresentations were made while Takahata was

with Eurus in order to infer Takahata's knowledge of the prior misrepresentations. As such, the Court finds that the SAC's fraud allegations fail to satisfy Rule 9(b) as it still does not allege Takahata's knowledge of falsity with particularity.

To the extent Plaintiffs continue to base the fraud claim on allegations that, on June 11, 2012, Mark Anderson, Eurus' CEO at that time, falsely represented to Sunfarms that Eurus had a reputation and practice of honoring express and implied contract terms, those allegations should be dismissed. Accordingly, Eurus' motion to dismiss Plaintiffs' fraud claim is GRANTED.

## V. Unfair Business Practices Claim

The UCL prohibits unlawful, unfair or fraudulent business acts or practices. Cal. Bus. & Prof. Code § 17200. "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cal-Tech. Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).

Defendants contend Plaintiffs cannot state a UCL claim because they are neither consumers nor competitors. ECF No. 40-1 at 25. In opposition, Plaintiffs assert that Defendants' action were unfair because Hawaiian energy consumers were and are harmed by (1) undue delays, (2) costs incurred by Defendants defending lawsuits then passed down to consumers, and (3) Plaintiffs' inability to consult with other companies. ECF No. 43-1 at 27. Defendants rely on *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 135 (2007) to assert Plaintiffs cannot set forth a UCL claim because neither the public nor individual consumers were parties to the contract. The SAC fails to allege that either the public or individual consumers were part of the Agreement. Therefore, Plaintiffs failed to properly allege a UCL claim based on an unfair act. Accordingly, Defendants' motion to dismiss the UCL claim is GRANTED.

## VI. Leave to Amend

Leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v.*

*Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted). "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is not appropriate unless it is clear the complaint cannot be saved by amendment. *Id.* Plaintiffs' requests for leave to amend have been granted *in toto* previously. However, the allegations set forth in Plaintiffs' SAC remain insufficient. After review of Plaintiffs' SAC, it has become clear to the Court that the leave to amend should not be granted on the following: (1) claims against the Project Company; (2) Plaintiffs' breach of implied covenant of good faith and fair dealing grounded in wrongful termination; (3) Plaintiffs' fraud claims; and (4) Plaintiffs' UCL claims. Otherwise, the Court grants Plaintiffs leave to amend the Complaint in accordance with this and prior order. As such, Plaintiffs' request for leave to amend is GRANTED IN PART and DENIED IN PART.

### Conclusion & Order

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motions to dismiss [ECF No. 40, 41]. Furthermore, no later than twenty-eight (28) days after the entry of this order, Plaintiffs shall file an amended complaint.

**IT IS SO ORDERED.**

Dated: September 26, 2019

Hon. M. James Lorenz
United States District Judge