UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNFARMS, LLC, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>EURUS ENERGY AMERICA CORPORATION, et al.,<br><br>        Defendants. | Case No.: 3:18-cv-58-L-AGS<br><br>**ORDER ON THE PARTIES' MOTIONS (ECFS 83, 90, 102, 115, 120, and 129).** |

Pending before the Court is Defendant Eurus Energy America Corporation's ("Eurus") motion for judgment on the pleadings, motion for summary judgment, and motion for leave to amend; Defendant Toyota Tsusho America, Inc.'s ("TTA") motion for summary judgment and motion to strike; and Plaintiffs Mitch Dmohowski and Sunfarms, LLC's ("Plaintiffs") motion for summary judgment. The Court decides the matters on the papers submitted without oral argument. Civ. L. R. 7.1.

**Background**

Eurus develops and operates renewable energy projects. In 2012, Plaintiffs entered into a consulting services agreement ("CSA") with Eurus related to projects in Hawaii: the Waianae Solar Project ("Waianae") and the Palehua Wind & Solar Project ("Palehua"). The CSA included a non-compete clause. Eurus had the option to terminate the CSA without cause. Plaintiffs were paid fifteen thousand dollars per month and were entitled to other periodic payments if certain conditions or achievements were met. The

CSA required Eurus to cause EE Waianae Solar Project LLC ("Project Company") – which owned and operated the Waianae project – to enter into a royalty agreement with Plaintiffs, entitling them to a percentage of gross revenue from the power sales. Eurus terminated the CSA in February 2017. Plaintiffs assert several claims against Eurus related to the periodic payments, royalty agreement, and non-compete clause.

TTA, Eurus's sister corporation, made an investment in the Project Company. TTA was not a party to the CSA. Plaintiffs seek to hold them liable for Eurus's conduct.

**Eurus's Motion for Judgment on the Pleadings (ECF 90)**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Judgment on the pleadings is proper if, taking all of plaintiff's allegations in its pleadings as true, the defendant is entitled to judgment as a matter of law. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) ("judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.")

Eurus moves to dismiss Plaintiffs' claims for injunctive and declaratory relief. Eurus also argues Plaintiffs are not entitled to punitive damages or an attorneys' fees award.

Plaintiffs structured their request for injunctive and declaratory relief as an independent cause of action that relates to the CSA's non-compete clause. (ECF 51 at ¶¶ 106, 109-113, and 117-118). Specifically, Plaintiffs seek an injunction against enforcement of the non-compete clause and a declaration that the clause is void as an illegal restraint of trade. *Id*. Per the CSA, the clause expired sometime in 2018.

Based on the expiration, Eurus contends the matter is now moot. In response, Plaintiffs raise arguments that are unrelated to the non-compete clause. But the allegations under the claim only relate to that clause. The injunction requested under the prayer for relief section likewise only seeks "an injunction prohibiting enforcement of" the non-compete clause.

There is nothing for the Court to enjoin because the clause is no longer in effect. And there is no chance it will be resurrected (Eurus and Plaintiffs would need to sign a new agreement for that to happen). The request for injunctive relief is thus moot. *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1095 (9th Cir. 2004) ("a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.") (internal quotation marks and citations omitted).

Plaintiffs also argue there is a live controversy as to their request for declaratory relief because they will rely on the Court's declaration to pursue damages for lost profits. However, there are no allegations about lost profits under the "declaratory relief" claim. Regardless, Plaintiffs cannot pursue damages for lost profits under that equitable claim (and the other three claims relate to Eurus breaching, not enforcing, the CSA). Any remedy must be tied to a cause of action. Pursuing some civil cause of action for lost profits would resolve any dispute as to whether the non-compete clause was illegal or void. Plaintiffs do not need a separate declaration from this Court. Although Plaintiffs contend the enforcement of the clause was a "business tort," such as "intentional or negligent interference with prospective economic advantage," those causes of actions are not in the operative complaint.

Overall, there is no live controversy as to the validity of the non-compete clause because it is no longer in effect. There are no rights or obligations to declare under an expired clause. The clause does not presently impact Plaintiffs, nor is it reasonably expected to do so in the future. The Court's declaration that the expired clause is void

would not provide any relief.[1] *See, e.g.*, *Center for Biological Diversity v. Lohn*, 511 F.3d 960, 964 (2007) ("where . . . both injunctive and declaratory relief are sought but the request for injunctive relief is rendered moot, the case is not moot if declaratory relief would nevertheless provide meaningful relief."); *see also Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) ("a determination that a plaintiff has standing to seek damages does not ensure that the plaintiff can also seek injunctive or declaratory relief."); *Leu v. Int'l Boundary Comm'n*, 605 F.3d 693, 694 (9th Cir. 2010). The request for injunctive and declaratory relief is thus subject to dismissal. For these reasons, the Court **GRANTS** the motion as to the equitable claims.

Plaintiffs request leave to amend. The Court should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a). Here, the deficiencies related to the above causes of action (remedies) cannot be cured. Plaintiffs, in the TAC, sought an injunction prohibiting the enforcement of the non-compete clause. They also sought a declaration that the clause was void as an illegal restraint of trade. The clause is now expired per the CSA. There is no threat of enforcement or likelihood of recurrence. There are no factual allegations that would cure the above deficiencies. The Court therefore declines to grant Plaintiffs leave to amend.

To pursue damages for lost profits resulting from any enforcement of the non-compete clause, Plaintiffs must assert a cause of action that entitles them to that recovery. Plaintiffs cannot transform their request for equitable remedies into a cause of action for civil damages. *See Wong v. Jing*, 189 Cal. App. 4th 1354, 1360 n.2 (2010) (injunctive relief is an equitable remedy and not an independent cause of action). If Plaintiffs wanted to pursue new claims, like intentional interference with prospective economic advantage, they would need to seek leave to amend the scheduling order (the deadline to amend the pleadings was February 14, 2020). Plaintiffs would have to show "good cause." Fed. R.

---

[1] Plaintiffs do not proffer any allegations that Eurus will sue them for any alleged breach of the non-compete clause.

1  Civ. P. 16. The main consideration under that standard is the "diligence of the party
2  seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th
3  Cir. 1992). There is no dispute Plaintiffs had the ability to assert the claims raised in their
4  opposition before the amendment deadline. Therefore, to the extent Plaintiffs seek leave
5  to amend the scheduling order to add new claims or allegations, their request is denied.
6  *Id*.

7   The remaining arguments raised in the motion for judgment on the pleadings relate
8  to Plaintiffs' request for punitive damages and attorneys' fees. The Court will address
9  those arguments after it decides the parties' summary judgment motions.

**Eurus's Motion for Leave to File Counterclaim (ECF 115)**

11   Eurus seeks leave to assert a counterclaim against Plaintiffs for defamation. Eurus
12  contends Plaintiffs made defamatory statements about Eurus's counsel, including
13  allegations that they engaged in a kickback scheme and sought to needlessly increase
14  their fees in this action. That alleged conduct occurred after the deadline to amend. Eurus
15  could therefore not seek leave prior to then. *See* Fed. R. Civ. P. 16; *Johnson*, 975 F.2d at
16  608. Even so, Eurus waited a significant period after receipt of the alleged defamatory
17  statements to seek leave to assert the counterclaim. In addition, the allegations are
18  unrelated to the operative claims.[2] Moreover, discovery would need to be reopened. That
19  would significantly delay the resolution in this action. For these reasons, the Court denies
20  the motion. *See* Fed. R. Civ. P. 15; *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F. 3d
21  1048, 1052 (9th Cir. 2003); *Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132,
22  1138-39 (9th Cir. 2002); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir.
23  2002); *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387-89 (9th Cir. 1990); *Lockheed*

---

[2] Eurus argues the counterclaim is dependent on the resolution of the contract claims in this action, citing Plaintiffs' comments about Eurus's bad faith conduct or breach. But any defamation claim based on that conduct could have been asserted prior to the deadline to amend the pleadings.

*Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). Eurus may pursue the defamation claims against Plaintiffs in a separate action.[3]

### Plaintiffs and Eurus's Cross-Motions for Summary Judgment (ECFs 102 and 120)

Eurus moves for summary judgment on the remaining claims: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, and (3) the common count. Plaintiffs move for summary judgment on whether Eurus breached the CSA.

### Legal Standard

Summary judgment is appropriate where the record, taken in the light most favorable to the nonmoving party, indicates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986).

To meet their burden, the moving party must present evidence that negates an essential element of the opposing party's case or show that the opposing party does not have evidence necessary to support its case. *Celotex*, 477 U.S. at 322-23; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000).

If the moving party meets this burden, the nonmoving party must support their opposition by producing evidence in support of the claim. *Celotex Corp.*, 477 U.S. at 324; *Nissan Fire & Marine Ins.*, 210 F.3d at 1103. They cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.

---

[3] The Court declines to address the merits of the proposed crossclaims.

1995) ("the mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.")

Facts are material when, under the substantive law, they could affect the outcome. *Anderson*, 477 U.S. at 248. Disputes about material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008).

When ruling on summary judgment motions, courts must view all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. Courts do not make credibility determinations or weigh evidence. *Anderson*, 477 U.S. at 255.

The court "may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). That is, courts are not required "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Cross-motions for summary judgment "must be considered on [their] own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001); *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 885 (9th Cir. 2019). Courts must review the evidence submitted in support of each cross-motion, and "give the nonmoving party in each instance the benefit of all reasonable inferences." *Americans Civil Liberties Union of Nevada v. City of Las Vegas*, 466 F.3d 784, 791 (9th Cir. 2006); *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015).

Plaintiffs "seeking summary judgment on a claim must offer evidence sufficient to support a finding upon every element of [their] claim other than elements admitted by the defendants." *Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018). "It is ordinarily a heavy burden." *Id*. at 538.

### Discussion

Plaintiffs assert Eurus breached the CSA in three ways. First, Eurus did not timely make a milestone payment. Second, Eurus did not cause the Project Company to enter into a royalty agreement with Plaintiffs. Third, Eurus did not pay Plaintiffs after one of the projects they consulted on was "shortlisted" by the Hawaiian Electric Company ("HECO"). The other claims rely on the same general allegations. The Court will address each allegation.

"The standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages." *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008) (internal quotation marks and citation omitted).

### *Milestone Payment*

Under the CSA, Plaintiffs were entitled to a milestone payment upon the "Achievement of Permits, Interconnection Rights, and Power Purchase Agreement." The agreement defines "Permits" as "the issuance to Eurus . . . of the applicable zoning and land use permits for the development and operation of the [projects] . . . for a period of at least twenty-five years . . . and in form and substance acceptable to Eurus." (ECF 120, Exhibit A). Eurus had to make the payment 30 days after (1) the above conditions were met, and (2) Plaintiffs submitted an invoice to Eurus. *Id*.

Plaintiffs submitted the invoice on January 14, 2017. Plaintiffs argue Eurus was required to make the payment 30 days later. (ECF 102-1 at 20). Eurus counters it had no obligation to make the payment because the conditions were not all satisfied. Eurus nevertheless made the payment in late March. Plaintiffs seek damages based on the alleged delay.

Plaintiffs seek summary adjudication that Eurus breached the agreement when it did not pay them 30 days after receiving their invoice. Plaintiffs argue all the conditions were met at that time because Eurus had the permits required to develop and operate the project. However, that argument does not track the terms. The milestone payment was not

due when Eurus began developing the project or operating it. Instead, the permits secured had to be acceptable to Eurus in form and substance. Moreover, the permits had to be effective for at least twenty-five years. Plaintiffs did not address the discretion vested in Eurus or the minimum length of time. Plaintiffs therefore failed to show they are entitled to summary adjudication on that element. Their summary judgment motion as to the milestone payment is denied.

Eurus likewise seeks summary adjudication on the milestone payment claim. Eurus argues it had no obligation to make the payment because the permits secured were not, in form or substance, acceptable to it. More specifically, the Hawaii State Historic Preservation Division ("SHPD") had not approved a final preservation plan for the project. Eurus only had an interim permit from them. Eurus met their burden. It demonstrated the conditions for the milestone payment were not met.[4] Plaintiffs failed to meet their burden. Overall, the record - taken in the light most favorable to Plaintiffs - shows there is no genuine dispute as to any material fact and Eurus is entitled to judgment as a matter of law on the milestone payment claim. The Court therefore grants Eurus's summary judgment motion as to that claim.

***Royalty Agreement***

Under the CSA, Eurus was required to cause the Project Company to enter into a royalty agreement with Plaintiffs on or before the commercial operation date. The CSA

---

[4] The CSA vested Eurus with discretion over when Plaintiffs were entitled to the milestone payment. Eurus contends its determination as to whether the permits were acceptable cannot be challenged. *Wolf v. Walt Disney Pictures and Television*, 162 Cal. App. 4th 1107, 1120 (2008) ("if the express purpose of the contract is to grant unfettered discretion, and the contract is otherwise supported by adequate consideration, then the conduct is, by definition, within the reasonable expectation of the parties and can never violate an implied covenant of good faith and fair dealing.") (internal quotation marks and citation omitted); *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 376 (1992); *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995). Even if an objective reasonableness test applied to Eurus's discretion, the record, viewed in the light most favorable to Plaintiffs, shows Eurus's determination – that a temporary permit was unacceptable – was objectively reasonable. *Chen v. PayPal, Inc.*, 61 Cal. App. 5th 559, 574 (2021) ("where an agreement gives a party discretion, that discretion must be exercised in a reasonable, non-arbitrary manner.")

set forth several terms that had to be included in the agreement. For instance, Plaintiffs were to be paid point five or point seven five percent of gross revenue, depending on the energy source (wind or solar), on an annual basis.

Plaintiffs allege: (1) Eurus – not the Project Company – entered into the royalty agreement with them, (2) Eurus failed to present a royalty agreement on or before the commercial operation date, and (3) the royalty agreement is unreasonable. Plaintiffs contend the agreement should include other terms, like a minimum annual royalty.

Eurus argues Plaintiffs cannot establish damages as to the failure to have the Project Company enter into the royalty agreement. Eurus likewise argues Plaintiffs did not suffer damages due to the delay as Plaintiffs received the royalties required under the CSA. Lastly, Eurus contends the royalty agreement included all the terms that the CSA required.

Plaintiffs contend they suffered damages by Eurus's failure to cause the Project Company to enter into the royalty agreement because Eurus, the only party to the royalty agreement, might be unable to make the payments. However, as an initial matter, that allegation is not contained in the operative complaint. Defendants were not put on fair notice. Plaintiffs cannot pass the summary judgment stage by raising new allegations or claims. *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (internal quotation marks and citation omitted). The Court therefore rejects that argument. Regardless, it is unsupported. Although Plaintiffs are not required to establish any specific amount to survive summary judgment, the fact of damages cannot be based on mere conclusory, speculative testimony or evidence.[5] Overall, there is no

---

[5] *See, e.g., Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 62 (1985) ("damages which are remote, contingent, or merely possible cannot serve as a legal basis for recovery."); *Scott v. Pac. Gas & Electric Co.*, 11 Cal. 4th 454, 472-473 (1995); *Lueter v. California*, 94 Cal. App. 4th 1285, 1302, (2002) ("whatever the proper measure of damages may be, in a given case, the recovery therefor is still subject to the fundamental rule that damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery.") (internal quotation marks and citation

evidence Eurus will be unable to continue making the payments as required under the royalty agreement.

Eurus has timely paid Plaintiffs their annual royalty, around seventy thousand dollars a year, since 2018.[6] The royalty agreement included all the terms required under the CSA, including the agreed upon rates and payment schedule.[7] The record, taken in the light most favorable to Plaintiffs, shows there is no genuine dispute as to any material fact and Eurus is entitled to judgment as a matter of law on the royalty agreement claim. The Court therefore grants Eurus's motion as to that claim.[8] Based on that, the Court denies Plaintiffs' summary judgment motion as to the claim.[9]

### "Shortlist" Payment

Under the CSA, Plaintiffs were entitled to 500,000 dollars if, prior to their termination, one of the projects they consulted on was "shortlisted" by HECO. Eurus contends the Palehua project was not "shortlisted" when it terminated the CSA.

"Shortlisted" is not defined under the CSA. Plaintiffs and Eurus dispute its meaning. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and

---

omitted). The alleged damages are too speculative to survive summary judgment. *See Navellier v. Sletten*, 262 F.3d 923, 939 (9th Cir. 2001) (grant of summary judgment appropriate where asserted damages were "too speculative," and noting that "damages which are speculative, remote, imaginary, contingent or merely possible cannot serve as a legal basis for recovery.") (internal quotation marks and citation omitted).

[6] Although the royalty agreement was not finalized on or before the project's commercial operation date, Eurus paid Plaintiffs the royalty for the year 2017.

[7] The other terms Plaintiffs rely on in their papers were not required under the CSA. Even if Eurus somehow breached other CSA obligations related to the royalty agreement, there is no evidence to indicate Plaintiffs suffered damages resulting from that conduct.

[8] If Eurus fails to make the royalty payments, then Plaintiffs may have a claim arising under that agreement (and any implied covenant). *See also McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 806 (2008). In the TAC, Plaintiffs did not seek an order that Eurus amend the royalty agreement to include the Project Company as a party. Plaintiffs sought an upfront lump sum payment of all the estimated royalties for the entire period. The operative claims relate to Eurus's obligations under the CSA.

[9] Plaintiffs sought summary adjudication as to whether Eurus committed a breach.

lawful." Cal. Civ. C. § 1636. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." Cal. Civ. C. § 1639. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. C. § 1638.

The Court finds the term is unambiguous. *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 799 (1998). "Shortlisted" is generally defined as "a limited list of important items or individuals" and "a list of candidates for final consideration." *Merriam-Webster Dictionary*; (ECF 102-1 at 22); *Cambridge Dictionary* ("shortlist" is "a list of people who have been judged the most suitable for a job or prize, made from a longer list of people originally considered, and from which one person will be chosen.") An individual or item is "shortlisted" when some decision maker selects them and others for further consideration from an initial list (*i.e.*, consolidates top candidates on a shorter list).

Viewing the record in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, the one-on-one negotiation (or other bilateral activities) between Eurus and HECO that occurred before the termination date do not reasonably fit within the term, "shortlisted." Plaintiffs also rely on HECO's requests for expressions of interest ("EOI"). Even if that process could result in being "shortlisted," HECO did not take any action on Eurus's submission until after Plaintiffs were terminated ("shortlisted" necessarily involves the decision maker's affirmative act).[10]

Plaintiffs do not dispute HECO's requests for proposals ("RFP") may result in being shortlisted. They also do not dispute the Palehua project was shortlisted when HECO put it on the priority list in January 2020 – in response to Eurus's RFP submission.[11] And again, Plaintiffs were terminated in February 2017, almost three years prior. The record, taken in the light most favorable to Plaintiffs, shows there is no

---

[10] *See* ECF 132-1 at 19 (noting the steps that precede being shortlisted).
[11] Plaintiffs simply argue the project was also shortlisted prior to then. That is, the project was shortlisted during bilateral negotiations or the EOI process.

genuine dispute as to any material fact and Eurus is entitled to judgment as a matter of law on the "shortlist" claim. The Court therefore denies Plaintiffs' summary judgment motion and grants Eurus's motion as to that claim. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (courts "may grant summary judgment motions touching upon contract interpretation when the agreement is unambiguous."); *United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988); *Int'l Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir. 1985); *Beck Park Apts. v. United States Dep't of Housing*, 695 F.2d 366, 369 (9th Cir. 1982); *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 799 (1998) ("interpretation of a contract is solely a question of law unless the interpretation turns upon the credibility of extrinsic evidence."); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983).

### *Breach of Implied Covenant of Good Faith and Fair Dealing*

These claims simply mirror the contract breach claims. Viewing the record in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, including as to the alleged damages, Eurus is entitled to judgment as a matter of law. The Court grants Eurus summary judgment on those claims for the same reasons set forth above. *Careau & Co. v. Sec. Pac. Bus Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (breach of implied covenant of good faith and fair dealing claims may be disregarded if they are nothing more than a contract breach); *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 55 (2002).

### *Common Count*

"A common count is . . . a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness." *McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004); *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 460-461 (1997). Plaintiffs assert a "common count" against Eurus related to the royalty agreement. They seek an upfront payment of all estimated royalties. Plaintiffs failed to show Eurus is indebted to them. Again, Eurus paid all the royalties due so far. There is

also no provision under the CSA or royalty agreement that entitles Plaintiffs to an accelerated payment. The Court grants Eurus's motion as to the common count for the same reasons set forth above.

### *New Claims or Allegations Raised in Summary Judgment Papers*

Plaintiffs, in their summary judgment papers, raised several new allegations, claims, or theories. The operative complaint did not put Defendants on fair notice as to those. Defendants would be substantially prejudiced if the Court allowed such an amendment at the summary judgment stage. There is also no good cause to amend the scheduling order or allow Plaintiffs to amend their pleadings at this late juncture. Plaintiffs had the ability to assert those allegations, claims, or theories in the TAC. The Court therefore denies any request for leave to amend the complaint. The Court likewise declines to address the unpled claims or allegations.[12,13] *Wasco Prods. Inc.*, 435 F.3d at 992; *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."); *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006).

### **Toyota Tsusho America, Inc.'s Motion for Summary Judgment (ECF 83) and Motion to Strike (ECF 129)**

Plaintiffs seeks to hold TTA vicariously liable for Eurus's conduct. TTA moved for summary judgment on all four claims, arguing there is no genuine issue of material fact as to whether it is vicariously liable for Eurus's conduct. Because the Court's above

---

[12] Because the Court granted Eurus's summary judgment in full, it denies as moot Eurus's remaining 12(c) arguments that are related to Plaintiffs' request for punitive damages and attorneys' fees.
[13] Unless otherwise noted, all objections to evidence are overruled for purposes of this order.

ruling disposes of the underlying claims against Eurus, it grants summary judgment to TTA.[14] The Court denies TTA's motion to strike Plaintiffs' jury demand as moot.

### Conclusion

For the reasons stated above, the Court orders as follows:

1. Eurus's motion for judgment on the pleadings is **GRANTED WITHOUT LEAVE TO AMEND**;
2. Eurus's motion for leave to assert a counterclaim against Plaintiffs is **DENIED**;
3. Plaintiffs' summary judgment motion is **DENIED**;
4. Eurus's summary judgment motion is **GRANTED**;
5. Toyota Tsusho America, Inc.'s summary judgment motion is **GRANTED**; and
6. Toyota Tsusho America, Inc.'s motion to strike is **DENIED** as moot.

**The Clerk is instructed to enter judgment in Defendants' favor and close this action.**

**IT IS SO ORDERED**.

Dated: March 31, 2022

_____
Hon. M. James Lorenz
United States District Judge

---

[14] Regardless, the evidence, viewed in the light most favorable to Plaintiffs, shows TTA lacked the requisite control over Eurus (or the Project Company) to hold it liable for their conduct. *See Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000); *Mavrix Photographs, Ltd. Liab. Co. v. LiveJournal*, Inc., 873 F.3d 1045, 1054 (9th Cir. 2017); *Simmons v. Ware*, 213 Cal. App. 4th 1035, 1056 (2013).